**COPY**

ORIGINAL
FILED
2010 NOV -1  P 12: 55
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**SC**

1  MILBERG LLP
2  JEFF S. WESTERMAN (SBN 94559)
   jwesterman@milberg.com
3  SABRINA S. KIM (SBN 186242)
   skim@milberg.com
4  One California Plaza
   300 S. Grand Avenue, Suite 3900
5  Los Angeles, California 90071
   Telephone: (213) 617-1200
6  Facsimile:  (213) 617-1975
7
   REESE RICHMAN LLP
8  MICHAEL R. REESE (SBN 206773)
   mreese@reeserichman.com
9  875 Avenue of the Americas, 18th Floor
   New York, New York 10001
10 Telephone: (212) 579-4625
   Facsimile: (212) 253-4272
11
12 *Attorneys for Plaintiff*

CV10   4935

13 [Additional Counsel on Signature Page]

14        UNITED STATES DISTRICT COURT

15        NORTHERN DISTRICT OF CALIFORNIA

16

| | | |
|---|---|---|
| 17 | IRIS PHEE and WILLIAM J. O'HARA individually and on behalf of all others similarly situated, | ) ) ) | CASE NO |
| 18 | | ) | **CLASS ACTION** |
| 19 | Plaintiffs, | ) ) | COMPLAINT |
| 20 | | ) | |
| 21 | v. | ) ) | |
| 22 | FACEBOOK, INC. and ZYNGA GAME NETWORK, INC., | ) ) | **JURY TRIAL DEMANDED** |
| 23 | Defendants. | ) ) | |
| 24 | | ) ) | |
| 25 | | | |

26
27
28

**FAXED**

CLASS ACTION COMPLAINT

DOCS\534195v1

Plaintiffs William J. O'Hara ("O'Hara") and Iris Phee ("Phee" or, collectively with O'Hara, "Plaintiffs") bring this action individually and on behalf of a Class of all persons similarly situated in the United States against Facebook, Inc. ("Facebook") and Zynga Game Network, Inc. ("Zynga" or, collectively with Facebook, "Defendants").

This case arises from Defendants' intentional and knowing transmission of users' personal information to Internet tracking companies and other third parties without the users' knowledge or consent, in violation of federal and state laws and in breach of Facebook and Zynga's respective agreements with its users.  Plaintiffs and the Class seek damages and equitable relief.  They allege the following upon personal knowledge as to their own acts, and upon information and belief based on the investigation conducted by Plaintiffs' Counsel, as to all other matters:

## FACTUAL ALLEGATIONS

1. With more than 500 million active users as of July 2010, Facebook is by far the largest social networking website service in the United States.  Its website address is found at http://www.facebook.com.  Zynga is a developer of browser-based interactive games that work on social network platforms such as Facebook.  Zynga's games include FarmVille and Mafia Wars, among others.  FarmVille alone has 59 million users.

2. Facebook users must first join Facebook by registering and agreeing to Facebook's Terms and Privacy Policy before they can post and share personal information on Facebook's website.  Once registered, users may post personal information, including but not limited to, name, address, phone number, email, gender, relationships, photographs, videos, and interests.  They may also participate in thousands of interactive Facebook-authorized applications, including Zynga's FarmVille and Mafia Wars.

3. Each Facebook user has a user ID number that uniquely identifies that user.  A Facebook user's ID is a public part of all Facebook profiles, and anyone can use an ID number to find a person's name on a standard web browser.  A Facebook user ID is available even if that user has set all of his or her information to private.  For users who have set their information to

- 1 -

be accessible to "everyone," their Facebook ID reveals all of the information cited above in paragraph 2.

4.      Facebook encourages users to share personal information by promising, in its "Statement of Rights and Responsibilities" (the "Facebook Terms") and in its Privacy Policy, not to share users' information with or send personally identifiable information to third-party advertisers and Internet tracking companies without the users' consent.

5.      Section 1 of Facebook's Terms, referred to as Privacy, states that, "your privacy is very important to us." [1]

6.      Section 2 of Facebook's Terms, referred to as "Sharing your Content and Information," states that, "You own all of the content you post on Facebook, and you can control how it is shared through your privacy and applications settings." [2]

7.      Section 10 of Facebook's Terms, referred to as "About Advertisements on Facebook," states that "We do not give your content or information to advertisers without your consent."[3]

8.      Section 4 of Facebook's Privacy Policy states:

> As mentioned above, we do not own or operate the applications or websites that use Facebook Platform. That means that when you use those applications and websites you are making your Facebook information available to someone other than Facebook. Prior to allowing them to access any information about you, we require them to agree to terms that limit their use of your information (which you can read about in Section 9 of our Statement of Rights and Responsibilities) ***and we use technical measures to ensure that they only obtain authorized information.*** To learn more about Platform, visit our About Platformpage. (emphasis added.)[4]

9.      Section 5 of Facebook's Privacy Policy, referred to as "How We Use Your Information," states, "We don't share your information with advertisers without your consent."[5]

---

[1] http://www.facebook.com/settings/?tab=privacy&ref=mb#!/terms.php (last visited Oct. 2010).
[2] *Id.*
[3] *Id.*
[4] http://www.facebook.com/settings/?tab=privacy&ref=mb#!/policy.php (last visited Oct. 21, 2010).
[5] *Id.*

CLASS ACTION COMPLAINT

DOCS\534195v1

10.     Under the heading, "Controlling How You Share, Facebook's Privacy Controls," Facebook states:  "Our privacy controls give you the power to decide what and how much you share. Learn how to manage who can see your information on and off Facebook," and, "We never share personal information with our advertisers . . . .  Facebook's ad targeting is done entirely anonymously . . . .  Advertisers only receive anonymous data reports."[6]

11.     Barry Schnitt, a director on Facebook's communication and public policy team, wrote in The Facebook Blog, dated April 5, 2010, "We don't share your information with advertisers unless you tell us to . . . .  Any assertion to the contrary is false. Period . . . we never provide the advertiser any names or other information about the people who are shown, or even who click on, the ads."[7]

12.     Zynga also required Plaintiffs and the Class to agree to Terms of Service ("Zynga Terms").   The Zynga Terms state, "Zynga respects the privacy of visitors to our game. Information collected from you is subject to the social network's policy," which in this case, was Facebook's privacy policy, prohibiting the release of user information without consent.   The Zynga Terms of Service refers the user to "Zynga's Privacy Policy at www.zynga.com for more information on the collection and use of your information" (the "Zynga Privacy Policy").   The Zynga Privacy Policy, last visited October 21, 2010, states that, "We do not sell or rent your 'Personally Identifiable Information' to any third party."

13.     These assurances were all false.  In fact, Facebook revealed personal information without user consent to advertisers and Zynga, and Zynga in turn provided the personal information to third parties, including outside data and marketing services.

14.     On May 21, 2010, the *Wall Street Journal* published an article entitled, "Facebook, MySpace Confront Privacy Loophole."   The article reported that Facebook sends "user names or ID numbers tied to personal profiles being viewed when users click on ads." This enabled advertising companies to look up individual profiles, which, depending on the site

---

[6] http://www.facebook.com/privacy/explanation.php (last visited Oct. 10, 2010.

[7] http://blog.facebook.com/blog.php?post=379388037130 (last visited on Oct. 21, 2010).

CLASS ACTION COMPLAINT

and the information a user has made public, include such things as a person's real name, age, hometown and occupation, college and even such personal preferences as their favorite movies.

15.    On October 18, 2010, the *Wall Street Journal* published an article entitled, "Facebook in Privacy Breach" in which it reported that Facebook also transmits Facebook users' identifying information to third-party applications, including Zynga applications FarmVille, Mafia Wars, and others.  Consequently, as reported by *CNET News* in an article published October 18, 2010, "when Facebook members agree to connect their Facebook credentials to any of the hundreds of thousands of applications that implement its third-party application programming interface (API), they are giving those developers access to their Facebook member ID numbers and in turn all publicly available information about them on Facebook (which includes names and lists of friends)."

16.    Zynga in turn transmitted the users' personal information to advertising and data firms.

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and 1332 (d), because the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and more than two-thirds of the members of the Class are citizens of states different from that of Defendants.  This Court also has federal question jurisdiction as this Complaint alleges violations of the Stored Communications Act (18 U.S.C. § 2510 *et seq.*).

18.    Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 as named Plaintiff Iris Phee resides in this District, Facebook's principal executive offices and headquarters are located in Palo Alto, California, and Zynga's principal executive offices are located in San Francisco, California.

- 4 -

DOCS\534195v1

## PARTIES

19.     Plaintiff Iris Phee is an individual who resides in Daly City, California and is a user of Facebook's social networking website.  During the Class Period she has clicked on at least one third-party advertisement that appeared on Facebook's website.

20.     Plaintiff William J. O'Hara is an individual who resides in Boston, Massachusetts. He is a user of Facebook's social networking website.  During the Class Period, he has clicked on at least one third-party application that appeared on Facebook's website and, from the Facebook platform, during the Class Period, interacted with the Zynga games FarmVille and Mafia Wars.

21.     Defendant Facebook is a Delaware corporation headquartered at Palo Alto, California.  Facebook conducts business throughout California and the United States.

22.     Defendant Zynga is a Delaware corporation headquartered at San Francisco, California.  Zynga conducts business throughout California and the United States.

## CLASS ACTION ALLEGATIONS

23.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated pursuant to Fed. R. Civ. P. 23 defined as follows:  All Facebook users who reside in the United States and who, any time after October 18, 2006, (i) interacted with Facebook's authorized applications or (ii) who, any time after October 18, 2006, clicked on a third-party advertisement displayed on Facebook's social networking website.

24.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants or any employees, officers, or directors of Defendants; legal representatives, successors, or assigns of Defendants; and any justice, judge or magistrate judge of the United States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

25.     **Numerosity**.  The Class members are so numerous and dispersed nationwide that joinder of all members is impracticable.  Upon information and belief, the Class members number in the hundreds of thousands, if not millions.  The exact number of Class members is

DOCS\534195v1

unknown, but can be determined from Defendants' computerized and other records. Plaintiffs reasonably estimate and believe that there are thousands of persons in the Class.

26. **Commonality**. There are numerous and substantial questions of law and fact that are common to all members of the Class, which questions predominate over any question affecting only individual Class members. The members of the Class were and continue to be subjected to the same practices of the Defendants. The common questions and principal common issues raised by Plaintiffs' claims include: whether Defendants shared Plaintiffs' and the Class's personal information with third-party advertisers and Internet tracking companies; whether Plaintiffs consented to Defendants' sharing of Plaintiffs' personal information with third-party advertisers and Internet tracking companies; whether Defendants violated their own Terms and Privacy Policies by sharing of Plaintiffs' personal information with third-party advertisers and Internet tracking companies; whether Plaintiffs and the Class have been damaged as a result of the Defendants' alleged violations as alleged herein; and, if so, the appropriate relief for Defendants' violations; whether Defendants have violated the Stored Communication Act (18 U.S.C. § 2701 *et seq.*) (the "SCA") and, if so, the appropriate measure of damages and remedies against Defendants for any violations of the SCA; whether Defendants breached their contracts and if so the appropriate measure of damages and remedies against Defendants for such breach; whether Defendants breached the covenant of good faith and fair dealing and, if so, the appropriate measure of damages and remedies against Defendants for such breach; whether Defendants have been unjustly enriched as a result of its unlawful conduct, and, if so, whether Defendants should disgorge inequitably obtained money that it has been unjustly enriched by; and, the nature and extent of any other remedies, and injunctive relief, to which Plaintiffs and the Class are entitled.

27. **Typicality**. Plaintiffs' claims are typical of the claims of all of the other members of each Class, because her claims are based on the same legal and remedial theories as the claims of the Class and arise from the same course of conduct by Defendants.

- 6 -

28.    **Adequacy**.   Plaintiffs will fairly and adequately protect the interests of all members of each class in the prosecution of this Action and in the administration of all matters relating to the claims stated herein.   Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of each Class they seek to represent.   Plaintiffs have retained counsel experienced in handling class action lawsuits.   Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

29.    **Superiority**.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since individual joinder of the Class is impracticable. Even if individual Class members were able to afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Defendants have subjected the Class to the same violations as referenced herein.   Accordingly, class certification is appropriate under Rule 23 because common issues of law and fact regarding Defendants' uniform violations predominate over individual issues, and class certification is a superior method of resolving these claims.   No unusual difficulties are likely to be encountered in the management of this action as a class action.   The Defendants have acted and continues to act in a manner that is generally applicable to all members of the Class, making final injunctive relief appropriate.

**FIRST CAUSE OF ACTION**
**(Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)**

30.    Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

31.    Facebook and Zynga provide an electronic communication service to the public *via* their social networking website and game applications, respectively. 18 U.S.C. § 2510 (15).

32.    Facebook and Zynga provide remote computing service to the public because they provide computer storage and processing services by means of an electronic communications system.  18 U.S.C. § 2711(2).

33.    Facebook and Zynga carry and maintain their respective users' Facebook Profile information solely for the purpose of providing storage and computer processing services to its

- 7 -

users. Facebook and Zynga are not authorized to access this information for purposes other than providing storage and computer processing. 18 U.S.C § 2702(a) (2).

34.     A user's Facebook Profile and personal information as stored by Zynga are electronic communications within the meaning of 18 U.S.C. § 2510 (12).

35.     Facebook and Zynga hold its users' Facebook Profiles in electronic storage within the meaning of 18 U.S.C. § 2510 (17).

36.     In relevant part, 18 U.S.C. § 2701 (a)(1)-(2) of the SCA provides that an offense is committed by anyone who: (1) intentionally accesses without authorization a facility through which electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains . . . [an] electronic communication while it is in electronic storage in such system.

37.     Facebook and Zynga intentionally exceeded their respective authorizations to access and control confidential and private information relating to Plaintiffs' and the Class's electronic communications in violation of 18 U.S.C. § 2701 *et seq.* of the SCA.

38.     In relevant part, 18 U.S.C. § 2702(a) (1)-(2) of the SCA provides that a person or entity shall not: (1) . . . knowingly divulge to any person or entity the contents of a communication . . . ; and (2) . . . shall not knowingly divulge to any person or entity the contents of any communication . . . .

39.     Section 2707 of the SCA provides for a civil cause of action and allows for damages, declaratory, and equitable relief.

40.     Facebook and Zynga knowingly, willfully, unlawfully, and intentionally without authorization divulged confidential and private information relating to Plaintiffs' electronic communications in violation of 18 U.S.C. § 2701 *et seq.* of the SCA.

41.     Facebook and Zynga engage in the foregoing acts without obtaining the lawful consent of the user. 18 U.S.C. § 2702 (b) (3).

42.     By engaging in the foregoing acts, Facebook and Zynga knowingly divulge the contents of communication carried and maintained by Facebook and Zynga on behalf of and

- 8 -

received by transmissions from Facebook and Zynga users in violation of 18 U.S.C. § 2702(a)(2).

43.      Plaintiffs are entitled to statutory damages of no less than $1,000.00 (one thousand dollars) per violation. Because Facebook's and Zynga's violations were willful and intentional, Plaintiffs are entitled to recover punitive damages as provided by 18 U.S.C. § 2702 (c).

## SECOND CAUSE OF ACTION
### (Conversion)

44.      Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

45.      Facebook and Zynga acknowledge that Plaintiffs "own all of the content and information that you post on Facebook, and you can control how it is shared through your privacy and application settings."

46.      Defendants unlawfully exercised dominion over and thereby converted Plaintiffs' and the Class members' respective personal information by providing it to third parties in violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq*., and in violation of their respective contracts with Plaintiffs and the respective class members.

47.      Plaintiffs and the Class were damaged thereby.

## THIRD CAUSE OF ACTION
### (Breach of Contract against Facebook)

48.      Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

49.      Facebook requires Plaintiffs to register only after agreeing to Facebook's Terms and Privacy Policy.  The Terms and Privacy Policy together constitute a valid and enforceable contract between Facebook and its users.  Plaintiffs submit personally identifiable information to Facebook and Facebook's contract promises Facebook will not share this information with third-party advertisers or applications developers without Plaintiffs' consent and the consent of each Class member.

- 9 -

50.     The Facebook Terms and Privacy Policy state that Facebook will use only non-personally identifiable attributes it has collected and that its advertisement targeting is done entirely anonymously.  Despite these promises, Facebook did in fact knowingly share users' personally identifiable attributes and non-anonymous user information with third-party advertisers and application developers in violation of its own Agreement with its users.

51.     Plaintiffs never consented to the sharing of their personally identifiable information to third-party advertisers and/or application developers.

52.     Plaintiffs have performed their obligations under the contract.

53.     Facebook materially breached its contractual obligations through its conduct as alleged herein, including its transmission of Plaintiffs' personal information to third-party advertisers and application developers including the Plaintiffs' user IDs without consent.

54.     Plaintiffs have been damaged as a direct and proximate result of Facebook's breach of their agreement with Plaintiffs. Plaintiffs have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Contract against Zynga)

55.     Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

56.      Zynga required Plaintiffs to affirmatively assent to the Zynga Terms and Privacy Policy before allowing them to display and access its game applications.  The Terms state, "Zynga respects the privacy of visitors to our game.  Information collected from you is subject to the pertinent social network's policy."  The pertinent social network policy was Facebook's Privacy Policy which prohibits the release of personal information without the users' consent. Additionally, the Zynga Privacy Policy, last visited October 21, 2010, states that, "We do not sell or rent your 'Personally Identifiable Information' to any third party."

57.     The Zynga Terms and Privacy Policy together constitute a valid and enforceable contract between Zynga and Plaintiffs.

DOCS\534195v1

58.     In breach of this contract, Zynga knowingly shared Plaintiffs' personally identifiable attributes and non-anonymous user information with third parties.

59.     Plaintiffs did not consent to the sharing of their personally identifiable information with third parties.

60.     Plaintiffs have performed their obligations under the contract.

61.     Zynga materially breached its contractual obligations through its conduct as alleged herein, including its transmission of Plaintiffs' personal information to third parties without their consent.

62.     Plaintiffs have been damaged as a direct and proximate result of Zynga's breach of their agreement with Plaintiffs and the Class. Plaintiffs have been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing against Facebook)

63.     Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

64.     Once Plaintiffs agreed to use Facebook's social network website, they agreed to Facebook's Terms and Privacy Policy, which constitute an enforceable contract.

65.     A covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including the Agreement that embodies the relationship between Facebook and its users.

66.     Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state.  Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

67.     Plaintiffs reasonably relied upon Facebook to act in good faith both with regard to the contract and in the methods and manner in which it carries out the contract terms.  Bad faith can violate the spirit of the Agreement and may be overt or may consist of inaction.  Facebook's

CLASS ACTION COMPLAINT

inaction in failing to adequately notify Plaintiffs of the release of personal information to third-party advertisers evidences bad faith and ill motive.

68.     The contract is a form contract, the terms of which Plaintiffs are deemed to have accepted once Plaintiffs and the Class sign up with Facebook.  The contract purports to give discretion to Facebook relating to Facebook's protection of users' privacy. Facebook is subject to an obligation to exercise that discretion in good faith.  The covenant of good faith and fair dealing is breached when a party to a contract uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices.  Facebook breached its implied covenant of good faith and fair dealing by exercising bad faith in using its discretionary rights to deliberately, routinely, and systematically make Plaintiffs' personal information available to third parties.

69.     Plaintiffs have performed all, or substantially all, of the obligations imposed on them under the contract, whereas Facebook has acted in a manner as to evade the spirit of the contract, in particular by deliberately, routinely, and systematically without notifying Plaintiffs of its disclosure of users' personal information to third-party advertisers.  Such actions represent a fundamental wrong that is clearly beyond the reasonable expectations of the parties. Facebook's disclosure of such information to third party advertisers and tracking companies is not in accordance with the reasonable expectations of the parties and evidences a dishonest purpose.

70.     Facebook's ill motive is further evidenced by its failure to obtaining Plaintiffs' consent in its data mining efforts while at the same time consciously and deliberately utilizing data mining to automatically and without notice provide user information to third-party advertisers and Internet tracking companies. Facebook profits from advertising revenues derived from its data mining efforts from Plaintiffs and the Class.

71.     The obligation imposed by the implied covenant of good faith and fair dealing is an obligation to refrain from opportunistic behavior.  Facebook has breached the implied covenant of good faith and fair dealing in the Agreement through its policies and practices as

alleged herein. Plaintiffs and the Class have sustained damages and seek a determination that the policies and procedures of Facebook are not consonant with Facebook's implied duties of good faith and fair dealing.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing against Zynga)

72.   Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

73.   Once Plaintiffs agreed to use Zynga's game applications, they agreed to Zynga's Terms and Privacy Policies, which together constitute an enforceable contract.

74.   A covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including the Agreement that embodies the relationship between Zynga and its users.

75.   Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state.   Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

76.   Plaintiffs reasonably relied upon Zynga to act in good faith both with regard to the contract and in the methods and manner in which it carries out the contract's terms.   Bad faith can violate the spirit of the Agreement and may be overt or may consist of inaction. Zynga's inaction in failing to adequately notify Plaintiffs of the release of personal information to third-party advertisers evidences bad faith and ill motive.

77.   The contract is a form contract, the terms of which Plaintiffs are deemed to have accepted once Plaintiffs signed up with Zynga.   The contract purports to give discretion to Zynga relating to Zynga's protection of users' privacy. Zynga is subject to an obligation to exercise that discretion in good faith.   The covenant of good faith and fair dealing is breached when a party to a contract uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices.   Zynga breached its implied covenant of good faith and fair

- 13 -

dealing by exercising bad faith in using its discretionary rights to deliberately, routinely, and systematically make Plaintiffs' personal information available to third-party advertisers and Internet tracking companies.

78.     Plaintiffs have performed all, or substantially all, of the obligations imposed on them under the contract, whereas Zynga has acted in a manner as to evade the spirit of the Agreement, in particular by deliberately, routinely, and systematically without notifying Plaintiffs of its disclosure of users' personal information to third-party advertisers.  Such actions represent a fundamental wrong that is clearly beyond the reasonable expectations of the parties. Zynga's disclosure of such information to data and marketing companies is not in accordance with the reasonable expectations of the parties and evidences a dishonest purpose.

79.     Zynga's ill motive is further evidenced by its failure to obtaining Plaintiffs' consent in its data mining efforts while at the same time consciously and deliberately utilizing data mining to provide user information to marketing and data companies.  Zynga profits from revenues derived from its data mining efforts from Plaintiffs.

80.     The obligation imposed by the implied covenant of good faith and fair dealing is an obligation to refrain from opportunistic behavior. Zynga has breached the implied covenant of good faith and fair dealing in the Agreement through its policies and practices as alleged herein. Plaintiffs and the Class have sustained damages and seek a determination that the policies and procedures of Zynga are not consonant with Zynga's implied duties of good faith and fair dealing.

### SEVENTH CAUSE OF ACTION
### (In the Alternative, Unjust Enrichment)

81.     Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

82.     By engaging in the conduct described in this Complaint, Defendants have knowingly obtained benefits from Plaintiffs under circumstances such that it would be inequitable and unjust for Defendants to retain them.

- 14 -

DOCS\534195v1

83.     Defendants have received a benefit from Plaintiffs and Defendants have received and retained money from advertisers and other third parties as a result of sharing Defendants' users' personal information with those advertisers without Plaintiffs' knowledge or consent as alleged in this complaint.

84.     Plaintiffs did not expect that Defendants would use their personal information without their consent to earn money from third parties.

85.     Defendants knowingly used Plaintiffs' personal information without their knowledge or consent to earn money from third parties and have full knowledge of the benefits they have received from Plaintiffs.  If Plaintiffs had known Defendants were not keeping their personal information from third parties, they would not have consented and Defendants would not have made money from third parties.

86.     Defendants will be unjustly enriched if Defendants are permitted to retain the money paid to it by third parties in exchange for Plaintiffs' personal information.

87.     Defendants should be required to provide restitution of all money obtained from its unlawful conduct.

88.     Plaintiffs are entitled to an award of compensatory and punitive damages in an amount to be determined at trial or to the imposition of a constructive trust upon the wrongful revenues and/or profits obtained by and benefits conferred upon them as a result of their wrongful actions as alleged in this complaint.

89.     Plaintiffs have no remedy at law to prevent Defendants from continuing the inequitable conduct alleged in this complaint and the continued unjust retention of the money Defendants received from third-party advertisers.

**EIGHTH CAUSE OF ACTION**
**(In the Alternative, Promissory Estoppel)**

90.     Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

91.     Plaintiffs submitted personally identifiable information to Facebook and Zynga, in detrimental reliance upon Facebook's clear promise that Facebook would not share the

CLASS ACTION COMPLAINT

personally identifiable information with third parties without their consent and, as a consequence, Plaintiffs suffered damages.

## NINTH CAUSE OF ACTION
### (Violation Of California Business And Professions Code § 17200, *et seq.* Unlawful, Unfair And Fraudulent Business Practices)

92.  Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

93.  Beginning at an exact date unknown to Plaintiffs, but within the Class Period, and at all times mentioned herein, Defendants have engaged, and continues to engage, in unfair, unlawful, and fraudulent trade practices in California by engaging in the unfair and illegal business practices detailed above.

94.  Defendants misled consumers by continuously and falsely representing during the Class Period that they would not share personal information with third parties without the consent of Plaintiffs when in fact they secretly provided such information to third parties as alleged herein.

95.  Defendants engaged in these unfair and fraudulent practices to increase their profits.  The business practices alleged above are unlawful under § 17200, *et seq.* by virtue of violating § 17500, *et seq.*, which forbids untrue and misleading advertising.  These business practices also are unlawful under the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and the business practices also are unlawful under the California Consumer Legal Remedies Act as discussed herein.

96.  Defendants' representations regarding personal information were important to Plaintiffs and likely to affect their decision to entrust Defendants with their valuable personal information.  Plaintiffs were injured by Defendants' unfair, unlawful and/or fraudulent acts in that they were forced to relinquish, for free, valuable personal information.  Had Plaintiffs known that Defendants would share their personal information with third parties, they would not have subscribed to the their respective services.

97.     The aforementioned practices that Defendants have used, and continue to use to their significant gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors, as well as injury to Plaintiffs.

98.     Plaintiffs seek full restitution and other equitable relief, as necessary and according to proof, to restore to Plaintiffs the value of all personal information that Defendants unlawfully converted by means of the unfair and/or fraudulent trade practices complained of herein, plus interest thereon.

99.     Plaintiffs seek an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.  Cal. Bus. & Prof. Code § 17203.  The acts complained of herein occurred, at least in part, within the Class Period.

100.     Plaintiffs are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.  Such misconduct by the Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the law, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recoup monies paid to the Defendants to which the Defendants are not entitled.  Plaintiffs have no other adequate remedy at law to ensure future compliance with the Cal. Bus. & Prof. Code alleged to have been violated herein.

101.     As a direct and proximate result of such actions, Plaintiffs have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such fraudulent, unfair and/or unlawful trade practices, and unfair competition in an amount that will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

CLASS ACTION COMPLAINT

102.   As a direct and proximate result of such actions, Defendants enjoyed, and continue to enjoy, significant financial gain in an amount that will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**TENTH CAUSE OF ACTION**
**(Violation Of California Business and Professions Code § 17500, *et seq*.**
**Misleading, Deceptive Or Untrue Advertising)**

103.   Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

104.   Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq*. for misleading and deceptive advertising.

105.   At all material times, Defendants engaged in a scheme of offering their Facebook and Zynga services to Plaintiffs by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the truth about the extent to which Defendants would share valuable personal information with third parties.  Defendants knew, or should have known, that these statements were deceptive, misleading, or untrue.

106.   Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq*. in that such promotional materials were intended as inducements to subscribe to Facebook and Zynga and are statements disseminated by the Defendants to Plaintiffs and were intended to reach Plaintiffs.  Defendants knew, or should have known, that these statements were misleading and deceptive.

107.   In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California *via* commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represent the truth about personal information that Facebook and Zynga subscribers entrust to Facebook and Zynga respectively.

108.    Consumers, including Plaintiff, were among the intended targets of such representations.

109.    The above acts of the Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiffs, were and are likely to deceive  consumers, including Plaintiffs, by obfuscating the truth about Facebook and Zynga's use of their personal information, all in violation of the "misleading prong" of California Business and Professions Code § 17500.

110.    As a result of the above violations of Business and Professions Code § 17500, *et seq.*, Plaintiffs have suffered, and continue to suffer, injury in fact and have lost money and/or property, and Defendants have been unjustly enriched at the expense of Plaintiffs.  Plaintiffs, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of the Defendants, and such other orders and judgments that may be necessary to restore to any person in interest any money paid for Defendants' services as a result of the wrongful conduct of the Defendants.

### ELEVENTH CAUSE OF ACTION
### (Violation of the California Consumer Legal Remedies Act – Cal. Civ. Code §1750, *et seq.* – Injunctive Relief Only)

111.    Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

112.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").  This cause of action does not seek monetary damages at this point, but is limited solely to injunctive relief.  Plaintiffs will amend this Class Action Complaint to seek damages in accordance with the CLRA after providing the Defendants with notice pursuant to Cal. Civ. Code § 1782.

113.    Defendants' actions, representations, and conduct has violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or that have resulted, in the sale or lease of goods or services to consumers.

114.   Plaintiffs are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

115.   Facebook and Zynga provided "services" to Plaintiffs within the meaning of Cal. Civ. Code § 1761(b).

116.   By engaging in the actions, misrepresentations, and misconduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) of the CLRA.  Specifically, in violation of Cal. Civ. Code § 1770(a)(5), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent that the service has particular uses, benefits, or quantities that it does not have.

117.   By engaging in the actions, misrepresentations, and misconduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(7) of the CLRA.  Specifically, in violation of Cal. Civ. Code § 1770(a)(7), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent that the service is of a particular standard, quality, or grade.

118.   By engaging in the actions, misrepresentations, and misconduct set forth in this complaint, Defendants have violated, and continue to violate, § 1770(a)(9) of the CLRA.  Specifically, in violation of Cal. Civ. Code § 1770(a)(9), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they advertise services with intent not to sell them as advertised.

119.   By engaging in the actions, misrepresentations, and misconduct set forth in this complaint, Defendants have violated, and continue to violate, § 1770(a)(16) of the CLRA.  Specifically, in violation of Cal. Civ. Code § 1770(a)(16), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

120.   Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If

CLASS ACTION COMPLAINT
DOCS\534195v1

Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs will continue to suffer harm.

121. Therefore, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Phee and O'Hara, on behalf of themselves and the Class, request the following relief:

A. An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

B. An award of damages, except as to the CLRA claim as alleged above;

C. Restitution of all monies unjustly obtained or to be obtained from Plaintiffs and members of the Class;

D. Declaratory and injunctive relief;

E. An award of reasonable attorneys' fees and costs; and

F. Such other relief at law or equity as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

To the full extent available, Plaintiff demands a trial by jury.

DATED: November 1, 2010

MILBERG LLP
JEFF S. WESTERMAN
SABRINA S. KIM

SABRINA S. KIM

One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
E-mail: jwesterman@milberg.com
skim@milberg.com

- 21 -

CLASS ACTION COMPLAINT

DOCS\534195v1

MILBERG LLP
PETER E. SEIDMAN
ANDREI V. RADO
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail: pseidman@milberg.com
        arado@milberg.com

REESE RICHMAN LLP
MICHAEL R. REESE
KIM RICHMAN
875 Avenue of the Americas, 18th Floor
New York, NY 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272
E-mail:  mreese@reeserichman.com

***Attorneys for Plaintiff***

- 22 -

CLASS ACTION COMPLAINT